UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RANGEL BROCHE PEREZ,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondent.

Case No. 2:26-cv-03088-TLF

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Rangel Broche Perez, a detainee at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"), seeks 28 U.S.C. § 2241 habeas relief for a violation of due process. Dkt. 1. Petitioner seeks an order granting the following relief: (1) his immediate release from immigration detention and restoring him to conditions no more restrictive than those in place prior to his re-detention; (2) a permanent injunction on his re-detention or imposition of any additional restrictions on his liberty during the pendency of his removal proceedings absent written notice and a hearing before a neutral decisionmaker where respondents must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community and that no alternative conditions would mitigate those risks; (3) upon his release respondents must return petitioner's personal property, including personal identification documents (other than a passport); and (4) attorney's fees and costs. Dkt. 1 at 16-17.

Respondents filed a response to the petition stating they do not oppose the

petition. Dkt. 5.

The Court **GRANTS** the habeas petition (Dkt. 1) as follows.

**BACKGROUND**

Petitioner is a citizen of Cuba. Dkt. 1-2 (Declaration of Rangel Broche Perez) ("Broche Perez Decl.") ¶ 1. On or around August 29, 2023, petitioner entered the United States near Brownsville, Texas with a CBP One appointment. *Id.* ¶ 2. After speaking with immigration officials, petitioner was granted parole and issued an I-94 document, his parole was valid through April 18, 2025. *Id.* He was also issued a Notice to Appear and instructed to appear for a hearing at the Miami Immigration Court on October 14, 2026. *Id.* Petitioner was released the same day and was not given any further instructions or reporting requirements. *Id.*

Petitioner pursued immigration relief, filing an application for employment authorization, which was granted around October 2023, and filing an application for adjustment of status with USCIS on October 16, 2024. *Id.* ¶ 3. Petitioner regularly updated his address with both USCIS and the immigration court, to ensure that he remained in compliance and would receive any communications in his case. *Id.*

Petitioner built a community in Key West, where he had friends and family. *Id.* ¶¶ 4–9. He found employment and developed close friendships with his coworkers. *Id.* ¶ 8. Petitioner rented his own home, where he lived from August 2024 until he was arrested by immigration officials. *Id.* ¶ 5.

Petitioner has no criminal history. *Id.* ¶ 10. On July 14, 2026, while driving to a friend's house petitioner was approached by several law enforcement vehicles. *Id.* ¶ 11. Petitioner pulled over and rolled down his windows, and an ICE officer requested his

driver's license and ordered him out of the vehicle. *Id.* Petitioner complied with the instructions, and when he exited his car, officers pushed him against the vehicle and handcuffed him. *Id.* ¶ 12.

When he asked why he was being detained, he was told they would explain later. *Id.* When he explained he was scheduled for immigration court in October and had completed all his paperwork, he was told that his court date would be advanced. *Id.* He was taken to a processing center in Florida, where he again explained that he had complied with all requirements in his case and asked why he was being detained. *Id.* ¶ 13. Again, he was simply told that his hearing would be advanced and was not provided an explanation for his arrest. *Id.* He was transferred among multiple facilities in Florida and then was eventually transported to the NWIPC, where he is currently detained. *Id.* ¶¶ 14-16.

Petitioner commenced this action on August 28, 2026. Dkt. 1. On September 14, 2026, respondents filed a response to the petition indicating they do not oppose the petition. Dkt. 14. On September 15, 2026, petitioner filed a reply requesting the petition be granted in light of respondents' non-opposition. Dkt. 15.

## DISCUSSION

### A. Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S.C.A. Const. Amend. 5. The right to due process extends to "all 'persons' within the United States, including [non-citizens],

whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Petitioner was initially released upon humanitarian parole and then re-detained. Such individuals have a protected liberty interest in remaining out of custody. *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the three-part test set forth in *Mathews v. Eldridge* applies in "the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *Mathews*, 424 U.S. 319. And district courts have since applied the *Mathews* test in similar circumstances. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21 (W.D. Wash. 2025),

Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors" under *Mathews*: The private interest affected by the official action; the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail. 424 U.S. at 335.

1. Private Interest

As to the first factor, the Court rejects the notion that petitioner's weighty liberty interest is greatly diminished solely because he is a noncitizen in immigration proceedings. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (Freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action); *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Even under circumstances where the initial decision to detain or release an individual is discretionary, the government's decision to release an individual from custody creates "an implicit promise, [upon which they may rely,] that parole will be revoked only if [they] fail[ ] to live up to the...conditions [of release]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). As the Supreme Court described in *Morrissey*, in addressing parole in the criminal context, "[parole] enables [the parolee] to do a wide range of things open to persons who have never been [in custody or] convicted of any crime[, such as, subject to conditions of parole, to work and to] be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens, [their] condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and the loss of liberty "inflicts a grievous loss on the parolee[.]" *Id.* at 481–84. Thus, the parolee possesses a

protected interest in his "continued liberty." *Id.* at 482. This Court "joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*." *Torres v. Hermosillo*, 25-cv-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases).

Here, the record shows petitioner was released on parole in 2023 and over the past three years has obtained employment authorization, worked as a mechanic, filed an application for adjustment of status with USCIS, has built a community of friends and family, has no criminal history, and has regularly updated his address with the immigration court and USCIS. He has a protected liberty interest in remaining out of custody.

The first factor weighs in petitioner's favor.

2. Risk of Erroneous Deprivation

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).

Courts have also held that where a noncitizen is released after an evaluation of their dangerousness and flight risk, their re-arrest and re-detention generally requires a showing of a material change in circumstance. *See, e.g.*, *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (granting habeas relief and immediate release where Government presented no evidence that "a

change in circumstances" supported its decision to revoke the IJ's bond order); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (citing *Sugay* and noting government counsel's representation that "DHS has incorporated [*Sugay*'s] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Furthermore, for those released on humanitarian parole:

> [D]ue process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) [the noncitizen] be given the opportunity to be heard with respect to the government's basis for re-detention under the applicable statutory and regulatory framework at a meaningful time and in a meaningful manner.

*Dieng v. Hermosillo*, 26-cv-00190-LK, 2026 WL 411857, at *8 (W.D. Wash. Feb. 13, 2026) (internal citations and quotations omitted).

Where an individual is released on humanitarian parole, the relevant statute and regulations require "that a DHS official with authority[1] decided that there were either 'urgent humanitarian reasons' or 'significant public benefit' justifying the parole of that individual, and that the individual did not pose a security or flight risk." *Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b)).

Here, although petitioner's parole expired in April 2025, that the government

[1] DHS officials authorized to make humanitarian parole decisions are "the Assistant Commissioner, Office of Field Operations; Director, Detention and Removal; directors of field operations; port directors; special agents in charge; deputy special agents in charge; associate special agents in charge; assistant special agents in charge; resident agents in charge; field office directors; deputy field office directors; chief patrol agents; district directors for services; and those other officials as may be designated in writing, subject to the parole and detention authority of the Secretary or his designees." 8 C.F.R. § 212.5(a).

continued to permit petitioner to live and work freely for over a year while he pursued his application for adjustment of status with USCIS "demonstrates a constructive extension of the parole." *Yao v. Mullin*, No. C26-1599-BAT, 2026 WL 1596276, at *3 (W.D. Wash. June 4, 2026). The procedures for on-notice termination applied which required that either "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must have determined that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States" and petitioner was required to be provided written notice of the parole termination. 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A).

Here, the record shows "the government failed to follow its own regulations, which it is not free to disregard." *Yao*, 2026 WL 1596276, at *3 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)); *Dieng*, 2026 WL 411857, at *8. There is also no showing of any material change in circumstance relevant to the issues of flight risk or dangerousness.

The second *Mathews* factor weighs in favor of petitioner.

3. Government's Interest

The government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. But the government's interest in bypassing basic procedural protections is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so *without a hearing* is low.") (emphasis added).

Although it would require the expenditure of resources to provide petitioner with pre-deprivation process, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. "[T]he government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 [for revocation of parole] because it is required to follow its own regulations." *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025) (internal citations and quotations omitted). Petitioner has no criminal history nor is there any evidence that petitioner presented a danger or flight risk. *See N.I. v. Hermosillo*, No. 2:26-CV-00592-BAT, 2026 WL 770038 (W.D. Wash. Mar. 18, 2026) (granting petitioner release where the record showed the government failed to follow their own regulations in revoking petitioner's parole and the record did not show a likelihood of flight or that petitioner posed a danger to the community).

This third factor also favors petitioner.

The Court finds all three *Mathews* factors favor petitioner. Petitioner's detention violates due process, and he is entitled to release under the same conditions that applied before he was re-arrested and re-detained. *See Torres*, 2026 WL 145715, at *8 (finding a violation of due process and granting release where the government failed to follow the statute and regulations in revoking petitioner's humanitarian parole).

**II. Permanent Injunctive Relief**

Petitioner also seeks a permanent injunction on his re-detention and imposition of any additional restrictions on his liberty during the pendency of his removal proceedings absent written notice and a hearing before a neutral decisionmaker where

respondents must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community and that no alternative conditions would mitigate those risks. Respondents have not opposed this request.

A party "seeking a permanent injunction … must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Petitioner has clearly suffered irreparable injury by being detained for several months in violation of due process. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Ortiz v. Hermosillo*, No. 2:26-CV-00384-TL, 2026 WL 607672, at *6 (W.D. Wash. Mar. 4, 2026) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). Monetary damages would be inadequate to compensate for a future loss of liberty. *See Jimenez Combita v. Hernandez*, 26-cv-2584-BAT, Dkt. 11 (W.D. Wash. Aug. 18, 2026). And petitioner has demonstrated the final two factors (which merge when the government is the opposing party) are satisfied: there is no disservice to the public and no undue hardship created by requiring the government to comply with constitutional procedures, and the cost of a pre-deprivation hearing is outweighed by the substantial liberty interests at stake. *Id.*

The Court finds the *eBay* factors are satisfied, and a permanent injunction is appropriate. Respondents are prohibited from re-detaining petitioner or imposing additional restrictions without adequate notice of intent to re-detain him and the grounds

for re-detention, as well as a pre-deprivation hearing before a neutral decisionmaker. *Pinch v. Noemi,* 792 F. Supp. 3d 1025,1038 (N.D. Cal. 2025) (granting a preliminary injunction, holding petitioner may not be re-detained unless the government provides "her with a pre-detention bond hearing before a neutral immigration judge. . . . [and unless] the government demonstrates at such a bond hearing by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms").

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the petition for writ of habeas corpus (Dkt. 1) and **ORDERS**:

(1) Respondents shall (a) **RELEASE** petitioner within 8 hours of entry of this order under the conditions of his expired parole agreement, and (b) file a status report certifying he has been released within 48 hours of entry of this order.

(2) Upon his release respondents must return petitioner's personal property, including personal identification documents (other than a passport).

(3) Respondents are prohibited from re-detaining petitioner or imposing additional restrictions without adequate notice of intent to re-detain him and the grounds for re-detention, as well as a pre-deprivation hearing before an Immigration Judge. At any pre-deprivation hearing, respondents shall bear the burden to prove by clear and convincing evidence that petitioner is a flight risk or a danger to the community and that no conditions other than his detention would be sufficient to prevent such harms.

(4) Petitioner may file a motion for an award of fees and expenses under the Equal Access to Justice Act within the time required by statute.

Dated this 16th day of September, 2026.

Theresa L. Fricke
United States Magistrate Judge